IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ANITA G. JONES,** | ) |
| | ) |
|        **Plaintiff,** | ) |
| | ) |
| vs. | ) Civil No. 13-cv-782-CJP[1] |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| **Acting Commissioner of Social** | ) |
| **Security,** | ) |
| | ) |
|        **Defendant.** | ) |

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff Anita G. Jones seeks judicial review of the final agency decision denying her application for Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Ms. Jones' application for benefits was denied after a hearing in December, 2008. (Tr. 8-19). After the Appeals Council denied review, plaintiff sought judicial review. See, *Anita Jones v. Michael Astrue*, Case No. 10-cv-793-CJP. This Court ordered the case remanded to the agency for further proceedings in November, 2011. (Tr. 578-591).

In the meantime, plaintiff filed a subsequent application for benefits, which was granted in August, 2011. That decision found that plaintiff was disabled as of December 1, 2009. (Tr. 594-595).

---

[1] This case was referred to the undersigned for final disposition on consent of the parties, pursuant to 28 U.S.C. §636(c). See, Doc. 26.

1

On remand, the case was assigned to ALJ Bradley L. Davis. The issue before him was whether plaintiff was disabled for the period of September 13, 2006, through November 30, 2009. Additional medical records were submitted, and ALJ Davis held another evidentiary hearing. He then denied the application on June 18, 2013. (Tr. 470-483). That decision stands as the final agency decision. 20 C.F.R. §416.1484(d).

## Issue Raised by Plaintiff

Plaintiff argues that the ALJ erred in weighing the opinion of her treating physician, Dr. Andrisse.

## Applicable Legal Standards

To qualify for SSI, a claimant must be disabled within the meaning of the applicable statutes.[2] For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. §423(d)(1)(A).**

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable

---

[2] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

2

by medically acceptable clinical and laboratory diagnostic techniques.  **42 U.S.C. §423(d)(3).**  "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit.  **20 C.F.R. §§ 404.1572.**

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled.  The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

***Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).**

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience.  **20 C.F.R. §§ 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513**

**(7th Cir. 2009.**

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three.  If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job.  ***Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984).  See also *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001**) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made.  It is important to recognize that the scope of review is limited.  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." **42 U.S.C. § 405(g)**.  Thus, this Court must determine not whether Ms. Jones was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made.  **See,** ***Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996)** (citing ***Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995**)).

The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

***Richardson v. Perales*,* **91 S. Ct. 1420, 1427 (1971).** In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. ***Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997)**. However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, ***Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.**

### The Decision of the ALJ

ALJ Davis followed the five-step analytical framework described above. He determined that plaintiff had not worked at the level of substantial gainful activity since the alleged onset date. He found that she had severe impairments of degenerative disc disease, status post left ankle injury, obesity, asthma, and hypertension. He determined that these impairments do not meet or equal a listed impairment.

The ALJ found that Ms. Jones had the residual functional capacity (RFC) to perform work at the sedentary exertional level, with a number of physical and mental limitations. She was unable to do her past relevant work. Based on the testimony of a vocational expert, the ALJ found that plaintiff was not disabled because she was able to do other jobs which exist in significant numbers in the local and national economies.

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in

formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff and is limited to the relevant time period. As plaintiff has not raised an issue with regard to her alleged mental limitations, the Court will not review that evidence in any detail.

The record as it existed prior to the first ALJ's denial was summarized in the Memorandum and Order, Doc. 28, in Case No. 10-cv-793-CJP. Those earlier records appear in the record in this case also, and have the same transcript page designations.

### 1.  Evidentiary Hearing

Ms. Jones was represented by an attorney at the evidentiary hearing before ALJ Davis on May 1, 2013. (Tr. 492).

Plaintiff was 49 years old in May, 2013. (Tr. 496). She testified that she had to stop working in August, 2006, because of her medical condition. She stood at a conveyer belt line at work, and she had to stand on one leg. On break, she had to put her feet up. The last time she went in to work, she had to be on crutches. (Tr. 497-498). During the period of 2006 to 2009, she had swelling in her left ankle six days a week. Walking or standing for too long caused swelling. She had to elevate her leg when sitting. (Tr. 500-502). During the day, she kept her leg elevated for at least five hours. If she did not elevate her leg, her ankle became very swollen. (Tr. 508).

A vocational expert (VE) also testified. She testified that plaintiff's past relevant work as a janitor was unskilled and medium. The ALJ asked the VE a series of hypothetical questions. One of the questions comported with the ultimate

RFC assessment, that is, a person of plaintiff's age and work history who was able to do work at the sedentary exertional level with the following limitations:

- Only occasional stooping, kneeling, crouching and crawling;
- No exposure to hazards in the workplace;
- No concentrated exposure to environmental irritants;
- Only simple, routine and repetitive tasks;
- Able to alternate between sitting and standing hourly.

The VE testified that this person could do sedentary jobs such as inspector, assembler and packer. (Tr. 519-521).

All work would be precluded if the person also needed to elevate her left leg, for about five hours a day. (Tr. 522-523).

### 3. Medical Treatment

Plaintiff went to the emergency room for pain and swelling in her left ankle in June, 2007. She was told to take Ibuprofen, elevate her foot and follow up with her doctor in one or two days. (Tr. 675-677).

Ms. Jones received primary health care from Southern Illinois Healthcare Foundation. Many of the notes are illegible. The notes reflect six visits from September, 2007, through September, 2008, and indicate that Ms. Jones complained of left ankle pain, back pain and shortness of breath. On the last visit, she weighed 331.5 pounds. (Tr. 348-353).

Plaintiff saw Dr. William Andrisse on January 31, 2008, for follow-up of hypertension, hypertensive cardiovascular disease, asthma, morbid obesity and severe low back pain. The doctor noted she had no way to pay for medical care,

tests or medicine, and said he would fill out paperwork for her so she could "receive some assistance." She said she had pain in her back and left ankle. The doctor did not make any notes regarding swelling in her legs or ankle. (Tr. 293).

The first ALJ's denial of plaintiff's application was dated December 10, 2008. (Tr. 11-19). The record reflects little medical treatment after that date.

On April 13, 2009, she was seen by Dr. Albarcha for chronic pain in her low back and ankles. On exam, she had 2+ edema of "lower extremity" with possible contact dermatitis in both feet. She was "morbidly obese" at 345 pounds. (Tr. 728). On April 30, 2009, a CT of the lumbar spine showed mild degenerate changes commensurate with age. There were multi-level disc bulges with mild spinal stenosis at L3-4 and L4-5. (Tr. 434).

On May 27, 2009, Ms. Jones saw Victor Horsley, D.P.M. She told him she had pain and discomfort in her left ankle for over three years, and she used crutches when needed for ambulation. He prescribed an ankle/foot orthotic ("AFO") and a walker, and suggested she continue to use crutches as needed. (Tr. 391). In June, 2009, he noted that an x-ray of the left foot was negative for fractures or spurs. (Tr. 389).

A cardiologist at Washington University School of Medicine in St. Louis, Missouri, evaluated plaintiff on June 3, 2009. He noted that an earlier stress echocardiogram ruled out structural abnormalities and showed no stress-induced wall motion abnormalities. A function test showed decreased expiratory reserve volume, which he thought was related to her obesity. She complained of shortness of breath, abdominal pain and "venous insufficiency" in her lower extremities. On

8

exam, she had mild 1+ pitting edema in the lower extremities. There was no indication that she was on crutches. He suggested a referral for evaluation for bariatric surgery and a sleep study for sleep apnea. He concluded that her shortness of breath was noncardiac and was related to obesity and lack of physical conditioning. (Tr. 738-739).

On July 15, 2009, Dr. Horsley noted that the "boot" helped, and Ms. Jones said her pain had not gotten any worse. An MRI had been done that day. Dr. Horsley suggested she use a wheelchair and not bear weight. (Tr. 388). The MRI of the left lower extremity showed a normal Achilles tendon and no edema around the plantar fascia. Joint spaces were maintained and there was no ligamentous or tendinous injury. There was subcutaneous edema anteriorly, medially and laterally. (Tr. 731).

In June, 2009, Dr. Albarcha noted pedal edema. (Tr. 726). An x-ray of the left foot was normal. (Tr. 386).

Plaintiff presented for a psychological exam in September, 2009, in a wheelchair. (Tr. 741).

The period in issued ended on November 30, 2009. Plaintiff was treated by Danica Wilson, M.D., beginning in December, 2009. Ms. Jones told Dr. Wilson that she had intermittent ankle pain, exacerbated by standing and walking. Her pain was alleviated by elevating the leg and ice. She "usually use[s] crutches." On exam, Dr. Wilson found that her extremities were normal, with no swelling, erythema or tenderness. (Tr. 452-453). In January, 2010, Dr. Wilson found that plaintiff's left ankle had mild swelling, and she had mild pitting edema of the left

lower extremity. The range of motion of the left ankle was decreased. (Tr. 450-451).

    4.    **Consultative Examinations**

Dr. Dean Velis examined plaintiff on November 28, 2006. On the same day, an x-ray of the left ankle showed mild degenerative disease of the ankle joint. (Tr. 219). She was 66 inches tall and weighed 333 pounds. She was unable to lie down on her back, and was examined sitting up. The range of motion of her back was within normal limits with pain on the left. Her left ankle was tender with limited range of motion. She was able to bear her own weight with a normal gait. Motor strength was full and equal in arms and legs. Dr. Velis concluded that she had low back pain with pain on range of motion and left ankle pain with limited range of motion. Her morbid obesity contributed to both these problems and required evaluation and management. (Tr. 221-224).

On March 6, 2007, Dr. Neerukonda examined plaintiff. He found that her left ankle was "slightly swollen and tender to touch." Her gait was antalgic, limping on the left side. He diagnosed a left ankle sprain. He concluded that she had full capacity to sit, and her ability to walk and to stand were reduced by up to 20%. (Tr. 252-257).

Dr. Mahesh Shah did another consultative physical examination on May 16, 2007. He found no edema in her extremities. Her left ankle had mild tenderness, but also had a full range of motion. She was able to bear her own weight and her gait was normal, but slow. She did not need an assistive device to ambulate. She was able to heel walk, toe walk and squat down. Dr. Shah concluded that Ms.

Jones had severe low back pain with marked limitation of range of motion and mild pain in the left ankle. She also had obesity "which can make above problems worse." (Tr. 264-267).

Dr. Vittal Chapa performed a consultative physical examination in April, 2009. Ms. Jones complained of pain in her low back, left ankle and right knee. She was 65.5 inches tall and weighed 345 pounds. On exam, she was able to bear weight and to ambulate without any aids. She had 1+ edema of the legs. Peripheral pulses were 3+ bilaterally. She had no specific motor weakness or muscle atrophy. Knee and ankle reflexes were symmetric. The range of motion of the left ankle and right knee were limited. (Tr. 697-700).

### 5. Opinions of Treating Doctors

On January 31, 2008, Dr. Andrisse completed a form entitled Physician's Assessment for Social Security Disability Claim. (Tr. 375). Dr. Andrisse listed diagnoses of severe low back pain and obesity. He said that Ms. Jones would need to "elevate her leg(s) periodically or throughout the day." He opined that she could sit for less than an hour total and could stand/walk for less than an hour total in an eight hour day. The last question on the form asks the doctor whether the patient's condition would reasonably prevent her from doing sedentary work on a sustained basis. The question also asks the doctor to briefly explain his answer. Dr. Andrisse did not answer this question. (Tr. 375).

Dr. Albarcha completed a form entitled "Medical Evaluation – Physician's Report" at the request of the state agency in August, 2009. He said he had first seen Ms. Jones in April, 2009. He indicated diagnoses of decreased vision, high

11

blood pressure, obesity, back pain, gout, asthma, bladder incontinence and left ankle pain. He noted that she had left ankle pain and swelling, and that she was "in wheelchair now as per podiatry order." He opined that her ability to walk was reduced by 20% to 50%. Her ability to stand was reduced by up to 20%. She had full capacity to sit and to perform activities of daily living. She was limited to lifting 20 pounds at a time, with frequent lifting of up to 10 pounds. (Tr. 733-738).

## Analysis

Ms. Jones argues that the ALJ erred in weighing the medical opinions. The crux of her argument is that the ALJ should have given controlling weight to Dr. Andrisse's opinion that she needed to elevate her legs periodically or throughout the day.

The Court first notes that plaintiff's argument as to why she needs to elevate her legs is imprecise, at best. In her brief, she seems to rely on both generalized swelling in the legs and on pain in her left ankle. However, in the first evidentiary hearing, Ms. Jones' testimony was that she elevated her legs because her ankles and feet "swell and turn black." She said she guessed this was due to gout, and she "keeps her legs up" to relieve the swelling. (Tr. 53-54). At the second hearing, she again testified that she elevated her feet because of swelling in her feet and ankles. She said she had been told that this was caused by gout. (Tr. 500-502).

Dr. Andrisse's opinion that plaintiff needs to elevate her legs was at issue in Ms. Jones' challenge to the first denial of her application for benefits. The Court in that case concluded that the ALJ erred in failing to discuss that aspect of Dr. Andrisse's opinion. See, *Anita Jones v. Michael Astrue*, Case No. 10-cv-793-CJP,

Doc. 28, pp. 10-11. ALJ Davis did not make the same mistake in this case. He specifically discussed Dr. Andrisse's opinion that plaintiff needed to elevate her legs at Tr. 480-481, and concluded that it was entitled to little weight.

Dr. Andrisse is, of course, a treating doctor. The opinions of treating doctors are to be evaluated under 20 C.F.R. §404.1527. Obviously, the ALJ is not required to accept a treating doctor's opinion; "while the treating physician's opinion is important, it is not the final word on a claimant's disability." **Books v. Chater, 91 F.3d 972, 979 (7th Cir. 1996)(internal citation omitted).** If is the function of the ALJ to weigh the medical evidence, applying the factors set forth in §404.1527. Supportability and consistency are two important factors to be considered in weighing medical opinions. See, 20 C.F.R. §404.1527(d). In a nutshell, "[t]he regulations state that an ALJ must give a treating physician's opinion controlling weight if two conditions are met: (1) the opinion is supported by 'medically acceptable clinical and laboratory diagnostic techniques[,]' and (2) it is 'not inconsistent' with substantial evidence in the record." **Schaaf v. Astrue, 602 F.3d 869, 875 (7th Cir. 2010), citing §404.1527(d).**

The ALJ must be mindful that the treating doctor has the advantage of having spent more time with the plaintiff but, at the same time, he may "bend over backwards" to help a patient obtain benefits. **Hofslien v. Barnhart, 439 F.3d 375, 377 (7th Cir. 2006).** See also, **Stephens v. Heckler, 766 F.2d 284, 289 (7th Cir. 1985) ("The patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find**

13

**disability.").**

When considered against this backdrop, the Court finds no error in the ALJ's weighing of the doctors' opinions. After reviewing the medical evidence, ALJ Davis rejected Dr. Andrisse's opinion that plaintiff must elevate her legs for a number of reasons. First, the ALJ pointed out that Dr. Andrisse's opinion is not supported by his office notes. Further, the opinion of Dr. Albarcha, who also treated plaintiff, conflicts with Dr. Andrisse's opinion, as do the opinions of the state agency consultants who reviewed the records. Lastly, the medical records in general do not document an on-going need to elevate her legs. All of these are proper considerations under 20 C.F.R. §404.1527, and are supported by the record.

Plaintiff argues that the ALJ erroneously said that "none of the other consultative examiners noted any edema, or any reason that the claimant would need to elevate the legs." (Tr. 480). She correctly points out that Dr. Neerukonda found that plaintiff's left ankle was slightly swollen, and Dr. Chapa found 1+ edema of the legs. This evidence does not, however, contradict the ALJ's statement that the consulting examiners did not find a reason why plaintiff would need to elevate her legs. While Dr. Neerukonda found slight swelling of the left ankle, he diagnosed a left ankle sprain. Despite this finding, he concluded that she had full capacity to sit, and her ability to walk and to stand were reduced by 20% at the most. He did not indicate that she needed to elevate her legs. (Tr. 252-257). Dr. Neerukonda examined plaintiff in March, 2007. A finding of slight swelling of the left ankle and a diagnosis of left ankle sprain do not logically support Dr. Andrisse's opinion, which was rendered almost a year later.

While the ALJ did not specifically note that Dr. Chapa found 1+ edema of the legs, he did correctly note that Dr. Chapa observed that Ms. Jones was able to bear weight and ambulate with no aids. (Tr. 479). Again, plaintiff testified that she needed to elevate her legs because of swelling in her ankles and feet. Dr. Andrisse did not specify why he thought plaintiff needed to elevate her legs. Generalized findings of edema in the legs do not necessarily support the proposition that Ms. Jones must elevate her legs while seated.

The ALJ correctly noted that plaintiff did not consistently have swelling in her lower extremities or ankles. For instance, he pointed out that a consultative examination in November 28, 2006, was basically normal except for decreased range of motion of the spine and limitations due to obesity. (Tr. 478). The report of that exam states that she had no edema in the extremities. See, Tr. 223. He also pointed out that, in May, 2007, Dr. Shah found no edema in her extremities. (Tr. 478-479).

The ALJ rejected Dr. Andrisse's opinion in part because it was not supported by his own treatment records. Plaintiff does not argue this point. Plaintiff reviewed the medical evidence at pages 3 through 8 of her brief. Notably, she does not highlight any finding by Dr. Andrisse of swelling in her legs, feet or ankles. Further, she does not claim that Dr. Andrisse diagnosed gout.

The ALJ also concluded that Dr. Andrisse's opinion was contradicted by Dr. Albarcha's opinion. Plaintiff points out that Dr. Albarcha detected swelling in the legs, and diagnosed gout. Dr. Albarcha started seeing plaintiff over a year after Dr. Andrisse first rendered his opinion. Dr. Albarcha did not advise plaintiff to elevate

15

her legs. The ALJ pointed out that Dr. Albarcha said she had full capacity to sit. (Tr. 481). He did not state that she needed to elevate her legs. (Tr. 733-738). Plaintiff has not demonstrated that the ALJ was incorrect in concluding that the opinions of the two treating doctors were inconsistent.

An ALJ can properly give less weight to a treating doctor's medical opinion if it is inconsistent with the opinion of another physician, internally inconsistent, or inconsistent with other evidence in the record. **Henke v. Astrue, 498 Fed.Appx. 636, 639 (7th Cir. 2012); Schmidt v. Astrue, 496 F.3d 833, 842 (7th Cir. 2007).** Further, in light of the deferential standard of judicial review, the ALJ is required only to "minimally articulate" his reasons for accepting or rejecting evidence, a standard which the Seventh Circuit has characterized as "lax." **Berger v. Astrue, 516 F.3d 539, 545 (7th Cir. 2008); Elder v. Astrue, 529 F.3d 408, 415 (7th Cir. 2008).** The Court finds that ALJ Davis more than met the minimal articulation standard here.

Even if reasonable minds could differ as to whether Ms. Jones was disabled at the relevant time, the ALJ's decision must be affirmed if it is supported by substantial evidence, and the Court cannot make its own credibility determination or substitute its judgment for that of the ALJ in reviewing for substantial evidence. **Shideler v. Astrue, 688 F.3d 306, 310 (7th Cir. 2012)**; **Elder v. Astrue, 529 F.3d 408, 413 (7th Cir. 2008).** ALJ Davis' decision is supported by substantial evidence, and so must be affirmed.

## Conclusion

16

After careful review of the record as a whole, the Court is convinced that ALJ Davis committed no errors of law, and that his findings are supported by substantial evidence.   Accordingly, the final decision of the Commissioner of Social Security denying Anita G. Jones' application for disability benefits is **AFFIRMED**.

The clerk of court shall enter judgment in favor of defendant.

**IT IS SO ORDRED.**

**DATE:   August 14, 2014.**

<pre>
                              s/ Clifford J. Proud
                              CLIFFORD J. PROUD
                              UNITED STATES MAGISTRATE JUDGE
</pre>